IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| M.D.F., | § | |
|     PETITIONER, | § | |
| | § | |
| V. | § | CASE NO. 3:20-CV-829-G-BK |
| | § | |
| JIMMY JOHNSON, ET AL., | § | |
|     RESPONDENTS. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner M.D.F.'s *Petition for Writ of Habeas Corpus*, Doc. 1, under 28 U.S.C. § 2241 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed herein, the petition should be **DENIED**.

**I.     BACKGROUND**

M.D.F. is a Guatemalan national currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Prairieland Detention Center in Alvarado, Texas.[1]  Doc. 5 at 2 (amended petition). In 2005, M.D.F. obtained lawful permanent resident status. Doc. 5 at 4. In 2017, following M.D.F.'s guilty plea to the charge of Injury to a Child with Intent to Cause Serious Bodily Injury for sexually assaulting his stepdaughter, the trial court deferred the adjudication of his guilt and sentenced him to ten years' community supervision. Doc. 5 at 4;

---

[1] According to the ICE online detainee locator system, M.D.F. since has been transferred to the Eden Detention Center in Eden, Texas. *See* https://locator.ice.gov/odls/#/index (last accessed on Nov. 2, 2020).

Doc. 10 at 17-24, 29.[2]  On December 11, 2018, the U.S. Department of Homeland Security ("DHS") detained M.D.F.  Doc. 7 at 2.  The next day, DHS issued a Notice to Appear, alleging that M.D.F. is subject to removal from the United States pursuant to Section 237(a)(2)(E)(i) of the Immigration and Nationality Act ("INA"), given M.D.F.'s status as an "alien who at any time after entry has been convicted of a crime of . . . child abuse. . . ."  Doc. 7 at 2.  M.D.F.'s initial removal hearing occurred in January 2019.  Doc. 5 at 5.  On June 3, 2019, his application for cancellation of removal was denied and he was ordered removed.  Doc. 5 at 5.  On June 19, 2019, M.D.F. filed an appeal with the Board of Immigration Appeals ("BIA"), which remains pending as of the filing of this recommendation.

On April 4, 2020, M.D.F. filed the instant petition for writ of habeas corpus.  Doc. 1.  While he does not dispute his mandatory detention under 8 U.S.C. § 1226(c), he alleges that the length of his mandatory detention has become "unreasonable," thereby violating his Fifth Amendment rights.  Doc. 5 at 8.  Specifically, M.D.F. contends that Section 1226(c) "does not allow ICE to imprison [him] indefinitely."  Doc. 5 at 3; Doc. 11 at 3.  Notwithstanding the length of M.D.F.'s detention, Respondents maintain that M.D.F.'s detention is proper under the plain terms of Section 1226(c) until the BIA issues its opinion, and a final order of removal is entered.  Doc. 9 at 2, 4-5.  Respondents also argue that, pursuant to 8 U.S.C. § 1252, the Court lacks "jurisdiction to review any matters related to removal."  Doc. 9 at 3.

Even assuming that Section 1226(c) detention may, in some circumstances, become unreasonable and rise to a due process violation, the Court concludes that it does not under the facts of this case.

---

[2] In exchange for his guilty plea to Injury to a Child, the State dismissed the related charge of continuous Sex Abuse of a Child in *State v. Franco*, No. F1421964 (Crim. Dist. Court. No. 2, Dallas Cty., Texas, Oct. 11, 2017).  Doc. 10 at 19-20.

## II. APPLICABLE LAW

Federal courts lack subject-matter jurisdiction to review the Attorney General's discretionary judgment to apprehend and detain aliens and the merits of removal orders. 8 U.S.C. §§ 1226, 1252. However, Sections 1252 and 1226 do not bar a federal court from considering an alien's constitutional challenges to continued detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) (remanding for determination of Section 1226 as-applied constitutional claims on the merits). In *Jennings*, the Supreme Court repeated that "§ 1226(e) does not preclude 'challenges [to] the statutory framework that permits [the alien's] detention without bail,'" *Id.* at 841 (quoting *Demore v. Kim*, 538 U.S. 510, 517 (2003)), but it did not offer further guidance about the constitutionality of protracted mandatory detention under Section 1226(c), *Id.* at 851.

The Court of Appeals for the Fifth Circuit has yet to address the constitutionality of extended mandatory detention, either pre- or post-*Jennings*. Each of the circuit courts to examine Section 1226(c) pre-*Jennings* held that the Fifth Amendment restricts the permissible length of detention under the statute. *See Misquitta v. Warden Pine Prairie ICE Processing Ctr.*, 353 F. Supp. 3d 518, 523-24 (W.D. La. 2018) (collecting cases but noting circuits were split on how to analyze prolonged mandatory detention during removal proceedings). After *Jennings*, however, the only circuit to address the constitutional challenge has held that "an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause." *German Santos v. Warden Pike Cty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020). That court agreed with district courts within and outside the Fifth Circuit that a case-specific, multi-factor, analysis must be conducted to determine whether the duration of an alien's detention has become "unreasonable." *See, e.g.*, *Id.* at 211-13; *Alexis v. Sessions*, No. CV H-18-

1923, 2018 WL 5921017, at *7 (S.D. Tex. Nov. 13, 2018); *Misquitta*, 353 F. Supp. 3d at 524; *Smith v. Barr*, 444 F. Supp. 3d 1289, 1301 (N.D. Okla. 2020). Factors relevant to a reasonableness analysis include (1) the duration of detention, (2) the likelihood of continued detention, (3) the reasons for the delay, and (4) the conditions of confinement. *German Santos*, 965 F.3d at 211-13.

### III.  ANALYSIS

Assuming without deciding that mandatory detention under Section 1226(c) may, in some circumstances, become unreasonable and a violation of due process, the Court finds based on the circumstances in this case that M.D.F. has not established that his continued detention is so unreasonable or arbitrary as to violate the Due Process Clause.

There is no bright-line threshold beyond which an alien's detention under Section 1226(c) becomes unreasonable and, thus, unconstitutional. M.D.F. has been detained for approximately 22 months, of which 16 have been in pre-final removal order detention awaiting the BIA's decision on appeal. The length of his detention is approaching the upper-limit of what some courts have found to be a reasonable duration. *Compare Saeku v. Johnson*, No. 1:16-CV-155-O, 2017 WL 4075058, at *4 (N.D. Tex. Sept. 14, 2017) (concluding 18 months' detention, eight of which in pre-order detention, was not unconstitutional considering that a BIA appeal of the removal order had been pending for about five months); *Kim v. Obama*, No. EP12-CV-173-PRM, 2012 WL 10862140 (W.D. Tex. July 10, 2012) (finding 18 months' detention not unreasonable given that the continued detention was a direct result of the petitioner's efforts and there was no improper behavior on the Government's part); *with German Santos*, 965 F.3d at 212 (finding 31 months' pre-order detention in prison alongside convicted criminals unconstitutional); *Smith*, 444 F. Supp. 3d at 1301-04 (same as to more than 30-month detention

in combined civil and criminal detention in county jail); *Thompson v. Edwards*, 18-1006 (ES), 2018 WL 4442225, at *3–4 (D.N.J. Sep. 17, 2018) (granting relief because the alien had been detained for 26 months and there was no evidence that he had engaged in dilatory tactics); *Vega v. Doll*, No. 3:17-1440, 2018 WL 3756755, at *3–5 (M.D. Pa. Aug. 8, 2018) (granting relief because the alien had been confined for 21 months and had not delayed his removal proceedings); *Alexis*, 2018 WL 5921017, at *8 (granting relief because the alien had been detained for 16 months, his detention exceeded the length of his criminal sentence, and he might well have been confined for another year awaiting the ruling of the appellate court).

Despite his 22-month detention, the record does not suggest any unusual delays, considering the progress of M.D.F.'s case and the procedural remedies and defenses that his counsel invoked throughout the removal proceedings. In June 2019, M.D.F. appealed the decision of the immigration court to the BIA and subsequently filed his initial and supplemental briefs in August and December 2019 respectively. Doc. 5 at 6. M.D.F. argues that the "[i]mmigration authorities did not act promptly in [his] removal case" because some initial hearings were postponed. Doc. 11 at 7-8. Notably, those hearings related to M.D.F.'s initial removal hearings, not the pending appeal before the BIA. Doc. 11 at 7-8. Additionally, the record does not reflect that the postponements were atypical or the result of bad faith. *See generally Misquitta*, 353 F. Supp. 3d at 527 (absence of unusual delay in removal proceedings and lack of evidence of government bad conduct weighed in favor of denying relief); *German Santos*, 965 F.3d at 212 ("[A]bsent carelessness or bad faith, [the Court] will not scrutinize the merits of immigration proceedings. . . ."). By the same token, the Court does "not hold an alien's good-faith challenge to his removal against him, even if his appeals . . . have drawn out the

5

proceedings." *German Santos,* 965 F.3d at 211. Here, there is no evidence that M.D.F. sought to prolong his proceedings by engaging in any dilatory tactics.

The Court can only speculate as to the likelihood of the length of M.D.F.'s continued detention, which depends on when the BIA will ultimately issue its decision and, in the event of an adverse ruling, whether M.D.F. will seek review in the Court of Appeals for the Fifth Circuit. M.D.F. provides a copy of the BIA's request for supplemental briefings, regarding admission of polygraph examination results. He does not include, however, a full copy of his supplemental brief. Doc. 7 at 50-53. M.D.F. also does not address the fact that no DHS brief was filed or whether that or any other substantive or procedural issue has had any impact on the resolution of his BIA appeal. Doc. 11 at 8.

Additionally, M.D.F. has been detained only in civil facilities and <u>not</u> in combined civil and criminal detention facilities alongside pretrial detainees or convicted criminals. *See e.g.*, *German Santos*, 965 F.3d at 212-13 (weighing detention factor in favor of alien detainee where he was detained in prisons alongside convicted criminals). He presents nothing, apart from conclusory assertions, to support his arguments that "the Government is holding [him] in conditions which amount to punishment," Doc. 11 at 6-7, or that his current conditions are poor or "indistinguishable from criminal punishment," *German Santos*, 965 F.3d at 212-13.

Considering the pending BIA appeal, M.D.F.'s detention under section 1226(c) is not indefinite. Again, its duration is dependent on the exhaustion of M.D.F.'s appeals and procedural remedies. More importantly, as noted *supra*, M.D.F. is being held in a civil detention facility, and there is no evidence in the record that the government has acted in bad faith or otherwise unreasonably delayed M.D.F.'s removal proceeding. As such, the Court concludes

that M.D.F.'s detention pending the completion of his BIA appeal has not yet reached the level of unreasonableness and continues to serve the purpose of section 1226(c).

### IV. CONCLUSION

In sum, M.D.F. is being lawfully detained. His detention is mandatory under 8 U.S.C. § 1226(c), and, weighing all the relevant factors, has not yet become unreasonable. The *Petition for Writ of Habeas Corpus* under 28 U.S.C. § 2241 should, therefore, be **DENIED**.

**SO RECOMMENDED** on November 10, 2020.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).