UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| M.D.F., | ) | |
| | ) | |
| Petitioner, | ) | CIVIL CASE NO. |
| | ) | |
| VS. | ) | 3:20-CV-0829-G-BK |
| | ) | |
| JIMMY JOHNSON, WARDEN, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the Findings, Conclusions, and Recommendation of the United States Magistrate Judge ("FCR") (docket entry 12) recommending that the petitioner M.D.F's petition for writ of *habeas corpus* be denied. M.D.F. filed objections (docket entry 13) and the court has made a *de novo* review of those portions of the proposed findings and recommendation to which objections were made. For the reasons discussed below, the court adopts sections I and II of the FCR, but declines to adopt sections III and IV of the FCR.

I. ANALYSIS

The court agrees with the Magistrate Judge that M.D.F's petition is governed by a Fifth Amendment reasonableness analysis derived from *Demore v. Kim* and

*Jennings v. Rodriguez*.  See generally *Demore v. Kim*, 538 U.S. 510 (2003); *Jennings v. Rodriguez*, __ U.S. __, 138 S. Ct. 830 (2018).  This analysis is case-specific and multi-factored.  See *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210-213 (3d Cir. 2020); *Alexis v. Sessions*, No. CV H-18-1923, 2018 WL 5921017, at *7 (S.D. Tex. Nov. 13, 2018).  Relevant factors include (1) the duration of detention, (2) the likelihood of continued detention, (3) reasons for delay, and (4) the conditions of confinement.  See *German Santos*, 965 F.3d at 211-213.

### A.   *Duration of Detention*

M.D.F has been in detention now for over twenty-two months.  The parties and the Magistrate Judge did not cite, nor could the court find, any case law where a detention of that length was held to be reasonable.  While there is no bright-line test, the cases cited by the parties and the Magistrate Judge suggest that continued detention is likely constitutionally suspect by at least the twenty month mark. Compare *Saeku v. Johnson*, No. 1:16-CV-155-O, 2017 WL 4075058, at *4 (N.D. Tex. Sept. 14, 2017) (O'Connor, J.) (finding eighteen months' detention permissible); *Kim v. Obama*, No. EP-12-CV-173-PRM, 2012 WL 10862140 (W.D. Tex. July 10, 2012) (finding eighteen months' detention permissible); with *Velasco Lopez v. Decker,* 978 F.3d 842 (2nd Cir. 2020) (ordering a bond hearing after fifteen months' detention); *Thompson v. Edwards*, No. 18-1006 (ES), 2018 WL 4442225, at *3–4 (D.N.J. Sep. 17, 2018) (granting relief after twenty-six months' detention and there was no evidence

petitioner had engaged in dilatory tactics); *Vega v. Doll*, No. 3:17-1440, 2018 WL 3756755, at *3–5 (M.D. Pa. Aug. 8, 2018) (granting relief after twenty-one months' detention); *Alexis*, 2018 WL 5921017, at *8 (granting relief after sixteen months' detention); see also *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *4 (S.D.N.Y Aug. 20, 2018) (noting that detention beyond six months is more likely to be unreasonable); *Clarke v. Doll,* No. 3:20-CV-31, 2020 WL 4933696 (M.D. Penn. Aug. 24, 2020) (finding twenty months' detention unreasonable); *Hylton v. Decker*, No. 20 CV 5994 (JGK), 2020 WL 6879067 (S.D.N.Y. Nov. 24, 2020) (granting relief after fourteen months' detention).  "In *Denmore* [sic], . . . a lawful permanent resident alien, Hyung Joon Kim, had been convicted of burglary and was subject to mandatory detention under § 1226(c). The Supreme Court upheld his six-month detention, reasoning that '[d]etention during removal proceedings is a constitutionally permissible part of that process.' . . . Relying on statistics showing that the average detention under § 1226(c) was 47 days and the median was 30 days, the majority held that Congress 'may require that persons such as [the petitioner] be detained for the brief period necessary for their removal proceedings.'" *Alexis*, 2018 WL 5921017 at *6 (internal citations omitted).  Thus, twenty-two months by itself may be constitutionally impermissible without addressing the other factors.  At the very least, it is suspect, and if any other factor points in M.D.F.'s favor, then M.D.F.'s due process rights have likely been violated.  See *Clarke*, No. 3:20-CV-31,

WL 4933696, at *2-4 (M.D. Penn. Aug. 24, 2020) (finding that factors one and two alone combined to make petitioner's detention unreasonable).

### B.  *Likelihood of Continued Detention*

M.D.F.'s appeal before the Board of Immigration Appeals ("BIA") has been pending now for upwards of fifteen months.  *See* FCR at 2.  This is a far longer period than federal regulations allow for the BIA to dispose of an appeal.  *See* 8 C.F.R. § 1003.1(e)(8)(i) (requiring the board to dispose of appeals within 180 days). Indeed, we can only speculate as to when that decision will be announced, and that is precisely the point.  M.D.F.'s wait may continue for another few months, and since the BIA appears unconstrained by the regulations, there is reason to assume it will take even more time before announcing a decision.  Moreover, given M.D.F.'s earnest resolve up to this point, it seems likely that M.D.F. will appeal a negative determination to the Fifth Circuit.  M.D.F.'s detention would then continue beyond the already suspect twenty-two months.  Further, the Constitution does not hold exhaustion of legal remedies against a detainee.  See *German Santos*, 965 F.3d at 212. It therefore appears highly likely that M.D.F's detention will continue regardless of when the BIA announces its decision.  This factor thus points in M.D.F.'s favor.

### C.  *Reasons for Delay*

The parties and the Magistrate Judge all appear to agree that no one has caused any delay in M.D.F.'s detention because of bad-faith tactics.  Had M.D.F.

engaged in bad-faith delay tactics and thus drawn out the length of detention, there might be grounds to find the current detention reasonable.  See *id*. at 210-213; *Thompson v. Edwards*, No. 18-1006 (ES), 2018 WL 4442225, at *3–4 (D.N.J. Sep. 17, 2018).  But that does not appear to be the case.  Therefore, this factor does not favor either side, leaving us with a suspect detention and one factor pointing towards granting relief.

### D.  *Conditions of Detention*

While there is clear disagreement amongst the parties and the Magistrate Judge over the conditions of M.D.F.'s detention, it is not necessary to resolve that conflict.  Even if the court were to conclude that the conditions of M.D.F.'s detention were more civil than criminal in nature, that would not change the outcome.  The court has already concluded that the balance of factors weighs in M.D.F.'s favor.  Analysis of this factor would not change the overall conclusion.

### II.  CONCLUSION

The court has reviewed the Findings, Conclusions, and Recommendation of the Magistrate Judge *de novo* after the petitioner M.D.F. made objections to them.  The court now adopts sections I and II of the FCR, but declines to adopt sections III and IV.  The FCR did not take enough account of the sheer length of time that M.D.F. has already been detained before considering the other relevant factors.  The court also does not agree with the Magistrate Judge's analysis of the second factor.

The record shows that M.D.F. has been detained for almost two years now. The BIA's continued delay in issuing a decision creates the specter of detention without any approximate end in sight.

The government must now justify M.D.F.'s continued detention.  Accordingly, within seven days of this date, the government shall schedule a bond hearing before an Immigration Judge at which the government must show "by clear and convincing evidence" that M.D.F. poses either a flight risk or a danger to the community.  See *German Santos*, 965 F.3d at 213.  If it cannot, then M.D.F.'s detention is no longer constitutionally valid, and he must be released.

**SO ORDERED.**

December 3, 2020.


A. JOE FISH
**Senior United States District Judge**